## Davis & Rankin Building and Manufacturing Co. v. N. B. Moberly.

1. NEW TRIALS—*Where a Case has not been Fairly Tried.*—Where the record impresses the Appellate Court with the belief that the merits of the controversy have not been fairly tried, the judgment will be reversed and the case remanded for a new trial.

2. PRACTICE—*No Written Pleadings.*—In cases where there are no written pleadings, the defendant may insist upon any defense to the plaintiff's claim that the proofs may warrant, as want or failure of consideration, recoupment or set-off, etc.

3. PROMISSORY NOTES.—*Defenses by Way of Recoupment or Set-off.*—Where there is an agreement to procure the incorporation of the stockholders in a corporation and to furnish a subscriber his share of stock as the consideration of the promissory note given by such subscriber, there is no reason why damages growing out of the breach of the agreement might not be interposed by way of recoupment or set-off, even though not pleadable as a want of failure of consideration.

**Assumpsit**, on a promissory note. Appeal from the County Court of McLean County; the Hon. C. D. MYERS, Judge, presiding. Heard in this court at the November term, 1895. Reversed and remanded. Opinion filed May 16, 1896.

KERRICK, SPENCER & BRACKEN, attorneys for appellant.

HART & HOFFMAN, attorneys for appellee.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This was a suit upon a promissory note for $100, given

by appellee to appellant, brought before a justice of the peace and removed by appeal to the County Court, where, upon a trial by jury, there was a finding for the appellee, upon which, after overruling a motion for new trial, the court rendered judgment against appellant for cost.

It appears from the evidence that a few months prior to the date of the note the appellant entered into a written contract with a number of persons residing at or near Farmer City by which the appellants undertook to construct a creamery plant for the price of $3,950. This contract was signed by appellant and by the parties of the second part, and the latter were to pay of the price named to the appellants the sums set opposite their respective names. The appellee was one of the subscribers and was to pay $100.

The contract provided that as soon as the sum of $3,950, should be subscribed, or in a reasonable time thereafter, the subscribers should form a corporation under the laws of the State. The necessary amount was subscribed and the appellant proceeded to build and equip the plant and on the 18th of July a committee appointed by the subscribers reported that the contract had been duly complied with by the appellant and that the committee had received the keys of the structure.

It appears from the testimony that a corporation was formed pursuant to the provisions of the contract, but whether that was done before or after the acceptance of the property is not definitely shown.

The note sued on bears date July 19, 1892, and was given on account of the subscription of the appellee, which had not been paid. He claims as a matter of defense that the agreement or subscription which he signed contained provisions substantially different from this one, or that it was so read to him; that he was not willing to pay his subscription for that reason, and that as a consideration for signing this note the agent of the plaintiff represented and promised that if he would give the note the appellant would organize the company and that the appellee should have his stock and then he should be " let out."

His testimony on this point is not clear.    He first states : "They promised that after they organized they would give me stock for my note and give my note back to me."    This statement, if made in connection with the circumstances which he details in regard to his signing the original contract of subscription, is not very intelligible.

Again he says :

"Well, there was another agent came to my house and he said he had come to collect the money; he came to see me three times; I told him that my understanding was, from the way they read the contract to me, that they had not complied with their contract, and I didn't propose to pay it; he came the third time, and then he made a proposition; he said that if I would pay him the money or give him my note so that they could go ahead and organize, he would see to it that I got stock for it and would let me out, and on that ground I gave him my note."

And again :

"He came to me a third time in the hayfield; said he had come to make me a proposition; that proposition was that if I would settle with him by note or money he would see that I got stock and would let me out of it; he said they could not organize until that money was collected."

According to the testimony, he had no good reason for not paying his subscription unless he was deceived and misled as to the contents of the instrument, which is quite improbable.    Equally improbable is the story he tells as to the representation made to him by the agent when the note was signed.    The appellant could not organize the company; that could be done by the subscribers only.    If the appellee misunderstood this his memory or understanding of the other provisions of the contract can hardly be trusted.

The appellant could not give him stock.    That could come from the subscribers only, though it would of course be withheld until the subscription was paid to the satisfaction of appellant.

As already observed the appellee had no defense to the subscription unless upon the ground that he was deceived or misled as to the terms and conditions of the contract.

The only theory consistent with his testimony upon which a want of consideration for the note can be argued seems to be that the appellant wanted the note merely as a matter of form, in order that the organization of the company might be perfected, and then the stock was to be exchanged for the note, thus conceding his objection to liability under the original contract, and for that reason the appellant was to take the matter off his hands and in effect carry his subscription and get his stock. It is not clear, however, that this is what the appellee was trying to establish by his testimony.

If his signature to the subscription was obtained by any fraudulent means chargeable to the appellant, of course he was not liable to pay, and in such case if the appellant, supposing that he had a probable defense, was willing to take his place, the most practical and sensible thing to do was to give him a receipt for the money and take an assignment of his stock. In such a situation why should he give his note payable a year after date with interest for a sum of money which he was not to pay?

There is no apparent reason why the alleged representations of the agent should have been made, or why such a circuitous course should have been taken when the supposed object could have been attained by a simpler and a more direct method.

It is quite evident that the defense interposed was a surprise to the plaintiff. It is hardly fair to say that such a defense should have been expected, or that the plaintiff was at fault in not being prepared to meet it. In support of the motion for new trial, an affidavit was presented, showing what evidence the plaintiff could produce upon another trial, and it seems reasonably certain that with such testimony the verdict would be for the plaintiff. We are impressed with the belief that the merits of this controversy have not been fairly tried, and in view of the very unsatisfactory nature of the defense as presented, and of the offer of testimony by the plaintiff in case of another trial, we think the motion for new trial should have been granted.

In the brief of appellant it is argued that the alleged defense could not be pleaded as a want of consideration to the note, because it amounted, if anything, to an independent contract to do or perform something in the future, and that if such contract was not performed and damage had thereby accrued to the defendant, the remedy was by action on the contract and not by way of defense that the consideration of the note had failed. Citing Gage v. Lewis, 68 Ill. 604.

There were no written pleadings in the case, and of course the defendant might insist upon any defense to the plaintiffs' claim that the proofs would warrant, *e. g.*, want or failure of consideration, recoupment or set-off.

If there was no ground for the defense that the subscription was fraudulently obtained, it is difficult to see what consideration there was for the alleged agreement of the plaintiff to procure an incorporation of the stockholders, and to furnish to defendant his share of the stock, as was predicated in some of the instructions.

Assuming that such an agreement by the plaintiff was the consideration upon which the note was given, and that it was not complied with, we see no reason why damages growing out of the breach of the agreement might not be interposed by way of recoupment or set-off—even though not pleadable as a want or failure of consideration.

The judgment will be reversed and the cause remanded.